### UNITED STATES v. GIOVANETTI.

### UNITED STATES v. MESSERSCHMIDT.

(First Division. Juneau. December 12, 1921.)

Nos. 1500, 1501–B.

1. Intoxicating Liquors ⬤⇒8, 132—National Prohibition Act—Alaska Prohibition Act.

Both acts of Congress, the National Prohibition Act (41 Stat. 305), and the Alaska Prohibition Act (39 Stat. 903, U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, §§ 3643b–3643r) are in force in Alaska. Both acts are enforceable to a large extent, by the same officers, in the one case acting under the provisions of the bone dry law of Alaska, and in the other under the National Prohibition Act. In other words, the Alaska Prohibition Act and the National Prohibition Act are to be construed and may be enforced concurrently, but where the provisions of the two laws conflict or are antagonistic by reason of more drastic legislation in the local act, the National Prohibition Act must give way to the provisions of the local law.

2. Intoxicating Liquors ⬤⇒249—Statutes—Searches and Seizures.

In Alaska there are three provisions of law in force under which a search warrant may issue for intoxicating liquors: First, under section 17 of the Alaska Prohibition Act (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp 1919, § 3643j); second, under the provisions of section 23 of the same act (section 3643m); in both such cases, however, the warrant must issue under the procedure of and limited by the general search warrant act of Alaska (sections 2488–2490, Compiled Laws Alaska 1913); and, third, under the provisions of section 25 of the National Prohibition Act, subject to and governed by the provisions of the general search warrant. act of June 15, 1917. (40 Stat. L. 228 [U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, §§ 10496¼a–10496¼v]).

3. Intoxicating Liquors ⬤⇒249—Searches and Seizures.

A proceeding for the issuance of a search warrant in liquor cases under the laws in force in Alaska cannot be considered a civil proceeding in the nature of a proceeding in rem. It is

⬤⇒See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

a proceeding of a semicriminal nature, or rather ancillary or supplemental to a criminal action.

**4. Intoxicating Liquors ⬤⟳247—Arrest—Searches and Seizures.**

If the officers of the law should discover any person actual- ly violating the Alaska Prohibition Act by manufacturing liquor, or having it in their possession, then it is their duty to make an immediate arrest, and on such arrest the officers are author- ized to take possession of the liquor so being manufactured and used, without a search warrant.

**5. Intoxicating Liquors ⬤⟳249—Searches and Seizures—Witnesses.**

On objection to a search warrant that there was no show- ing that there was any appearance of one or more persons who are competent witnesses before the issuance of the warrant, *held*, every person is presumed to be a competent witness, and it is unnecessary, either in the affidavit or warrant or record, to show the competency of a person making the affidavit. In- competency of a witness in such case must be shown by the party objecting thereto.

**6. Intoxicating Liquors ⬤⟳249—Searches and Seizures—Statutes.**

Objection to a search warrant issued under section 17 of the Alaska Prohibition Act that it does not show the oath made by the complaining witness was made before the district at- torney, or his authorized deputy. *Held*, that it is not neces- sary that the district attorney or his deputy should administer the oath; that the district attorney has no authority under the law to administer the oath. The reasonable construction of that requirement is that the words "charge under oath" should be construed so as to read "accuse on oath before the district attorney"; in other words, that if a presentment on oath should be made to the district attorney, he should act.

**7. Intoxicating Liquors ⬤⟳249—Searches and Seizures—Description of Premises.**

Search warrant issued commanding the marshal to search the San Francisco Bakery Building for intoxicating liquor al- leged to be concealed therein by the defendant; objection is made that the San Francisco Bakery Building is a three-story building, each separate floor or story of which was occupied by separate families as their dwelling places. *Held* sufficient because the affidavit sets forth that the building is occupied by the defendant, and alleged that he has concealed therein alco- holic liquors—a sufficient description of the premises to be searched.

**8. Intoxicating Liquors ⬤⟳249—Searches and Seizures—Probable Cause.**

Where the affidavit for a search warrant discloses that the affiant saw men drinking from containers on the premises, and as a result thereof the men became intoxicated, and in the premises saw men receive alcoholic liquors from the defendant

⬤⟳See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and drinking liquors which had the effect of intoxication, there is sufficient evidence of probable cause for the issuance of a search warrant. An express finding of probable cause in the warrant itself, or in the court records, is not necessary. The fact that a search warrant is issued by a justice of the peace is in itself a finding of probable cause by him.

9. **Criminal Law ⊜⟹394—Intoxicating Liquors ⊜⟹249—Searches and Seizures.**

A search warrant was issued to search certain described premises, but neither the affidavit nor the search warrant named or disclosed the person charged, and did not present that any person, company, etc., has or have violated the act: *Held,* fatal omission, and rendered the search warrant void, and the proceedings thereunder illegal; the warrant was quashed and all evidence obtained thereby was suppressed.

10. **Intoxicating Liquors ⊜⟹249—Searches and Seizures—Return and Receipt.**

The objection that no receipt was given for the property seized on search warrant, or no proper return was made by the officer, are simply omissions by the officer making the seizure to do ministerial acts, which may be corrected at any time, and are not grounds for quashing the writ.

Arthur G. Shoup, U. S. Atty., and Lester O. Gore, Asst. U. S. Atty., both of Ketchikan.

Hellenthal & Hellenthal and J. W. Kehoe, all of Juneau, for defendants.

REED, District Judge. The two cases (United States v. Giovanetti and the United States v. Messerschmidt) involving the validity of the search warrants issued by the United States commissioner, Juneau precinct, were submitted to me upon an agreed statement of facts some time since, on motions in each case for the return of the intoxicating liquors seized by the United States marshal. A number of objections were urged by the counsel for defendant in each case against the procedure under which the warrants were issued, and the law in relation thereto was learnedly argued, and elaborate briefs, citing a large number of authorities, were submitted by counsel.

As opportunity would permit, the court examined all the cases submitted on the questions involved and many others, but in this brief résumé can no more than give the conclusions of my study thereof. Suffice it to say that very few of the

opinions, either federal or state, submitted, are in point on the questions in the case at bar, except as to the general principles of law relative to search warrants set forth in the Boyd Case, 116 U. S. 627, 628, 6 Sup. Ct. 524, 29 L. Ed. 746, Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, and in Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319, Gouled v. United States, 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647, and other decisions of the Supreme Court. The reason for this is that under a decision of our appellate court the territory has at present two statutes bearing directly on the question of the possession, manufacture, and sale of intoxicating liquor. Both statutes are enforceable, to a large extent, by the same officers, in the one case acting under the provisions of the bone dry law of Alaska, and in the other under the National Prohibition Act. In the case of Abbate v. United States, 270 Fed. 735, Judge Gilbert, for the Court of Appeals, Ninth Circuit, says:

"The bone dry law of Alaska remains in force, just as do the prohibition laws of the states, and the National Prohibition Act, although in force in all jurisdictions, affects no more the Alaskan act than it does the state acts."

Again he says:

"The provision of the National Prohibition Act for the punishment of selling liquor in Alaska is 'locally inapplicable' in Alaska, for the reason that Congress has provided for a severer penalty for the act when committed."

In other words, our appellate court has decided that the two acts, the local prohibition act, known as the Alaska bone dry law (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, §§ 3643b–3643r), and the National Prohibition Act, known as the Volstead Act (41 Stat. 305), are to be construed and may be enforced concurrently; but, where the provisions of the two laws conflict or are antagonistic by reason of more drastic legislation in the local act, the National Prohibition Act must give way to the provisions of the local law. See, also, in this connection, Woods v. City of Seattle (D. C.) 270 Fed. 315, and U. S. v. Peterson (D. C.) 268 Fed. 864.

Having the decision of our appellate court in view, it may readily be seen that in many cases the decisions of federal and state courts relative to search warrants issued for the

search and seizure of intoxicating liquors are not in point. For example, where there is no local prohibition act and where the authorization to issue warrants for search and seizure of intoxicating liquors is confined to the process issued out of federal courts under the national act, or where the local prohibition statute provides for process in the nature of search warrants to issue under state statutes, the authorities do not necessarily cover the procedure in this territory. To reach a correct conclusion as to the points at issue in the two cases before me, it will therefore be necessary to review the law relative to search warrants now in force in Alaska and determine how far the local search law may be applicable to searches and seizures under the bone dry law of Alaska and also under the National Prohibition Act.

When the laws of the state of Oregon, by the act of May 17, 1884, providing for a civil government in Alaska, were extended to the territory, our local law relative to search warrants, being then a part of the Oregon laws, became effective in the territory. This law was afterward re-enacted by Congress by the act of March 3, 1899 (30 Stat. 1326), and, as so re-enacted, comprises chapter 38 of the Code of Criminal Procedure, as embodied in the Compiled Laws of Alaska 1913. The following is a brief summary of chapter 38 of the Compiled Laws of Alaska 1913, being sections 2486 to 2499:

Section 2486, Compiled Laws, authorizes the issuance of a search warrant by any magistrate who has authority to issue a warrant of arrest to be directed to any peace officer, commanding him to search for personal property at any place within the district. Section 2487 specifies the grounds for the issuance of a warrant as follows: First, when it is stolen or embezzled; and, second, when the property was used as a means of committing a felony.

In the case at bar neither of these two grounds are material to the discussion in this case, and cannot be of further interest herein. The third ground is that, when property is in the possession of any person, with intent to use it as a means of committing crime, or in the possession of another to whom he may have delivered it for the purpose of concealing it or preventing it from being discovered, it may be taken on the warrant from the possession of such person, or the person to whom he may have delivered it, or from any house or other

place occupied by them, or under their control, or either of them.

Section 2488 provides how a search warrant should issue, and further provides that a search warrant cannot be issued but upon an affidavit showing probable cause, naming or describing the person, and describing the property and place to be searched. Section 2489 provides that the magistrate shall examine the complainant and witnesses on oath and take their depositions in writing, which must be subscribed by them. Section 2490 provides the form for a search warrant. Sections 2491 to 2499 provide how the officer shall execute a warrant; provide for a receipt to be given by the officer for the property seized, the disposition of the property by the magistrate, when the warrant shall be executed, limiting the time and the return of the warrant; provide for an inventory to be made, and that the inventory of the property taken shall be given by the magistrate to the person dispossessed thereof; also for proceedings, when the return is controverted, and the return of the proceedings by the magistrate to the district court.

The general provisions of our local statute with reference to search warrants are almost identical with the provisions of the act of Congress of June 15, 1917 (40 Stat. 228), and in the National Prohibition Act authority is given for the issuance of a search warrant or the search and seizure of intoxicating liquors, under the provisions of the act of Congress of June 15, 1917. It will be unnecessary to state in detail the provisions of the last act referred to, because of its similarity to the local statute, and therefore, in any further discussion of the matter before me, it need only be referred to.

Turning now to the question of authority to issue a search warrant for intoxicating liquor under the provisions of our local statute, I find that District Judge Truitt, in the case of In re Moore (D. C.) 66 Fed. 948, on March 27, 1895, authorized the issuance of a search warrant for the discovery and seizure of liquors unlawfully imported into the territory of Alaska. At this time the laws of Oregon, and therefore our local search warrant statute, were in force, and the warrant must have been issued under the provisions of that statute, though it nowhere appears in the decision that the particular statute under discussion was considered. However, it was in

that case held that the issuance of a warrant was in the nature of a proceeding in rem. This construction of our local search warrant law is also suggested and urged by the government in the case at bar. I am of the opinion, however, that under no construction of law can proceedings for the issuance of a warrant under the local statute be considered a civil proceeding in the nature of a proceeding in rem. It is a proceeding of a semicriminal nature, or rather ancillary or supplemental to a criminal action.

The grounds for the issuance of a search warrant contained in the local statute and embodied in section 2487, Compiled Laws of 1913, are: First, for the seizure of property stolen or embezzled; second, property used in the commission of a felony; and, third, when property is in the possession of a person with intent to use it as the means of committing a crime. Section 2488, stating what a search warrant should contain, requires that a person must be named and described. The decisions of those states which hold that proceedings for search warrants issued for intoxicating liquors are in the nature of proceedings in rem, and therefore civil, are based upon special legislation with reference to the enforcement of liquor laws authorizing search and seizure and condemnation and destruction of contraband liquor, whether in any one's possession or not.

Now, turning to the bone dry law, section 17 provides for the issuance of search warrants under the following conditions:

"That if one or more persons who are competent witnesses shall charge, under oath or affirmation, before the district attorney or any of his deputies duly authorized to act for him, presenting that any person, company, copartnership, association, club, or corporation has or have violated or is violating the provisions of this act by manufacturing, storing, or depositing, offering for sale, keeping for sale or use, trafficking in, bartering, exchanging for goods, giving away, or otherwise furnishing alcoholic liquor, shall request said district attorney or any of his assistants duly authorized to act for him to cause to be issued a warrant, said attorney or any of his assistants shall cause to be issued such warrant, in which warrant the room, house, building or other place in which the violation is alleged to have occurred or is occurring shall be specifically described," etc.

Then follows the authority for the marshal to search for and safely keep liquors seized as evidence, when required.

Section 23 of the bone dry act provides that there shall be no property right of any kind in alcoholic liquors or beverages unlawfully manufactured, received, possessed, or stored under the act, and in all such cases the liquors are to be forfeited to the United States, and may be searched for and seized and ordered destroyed by the court, after conviction, when such liquors have been seized for use as evidence, or upon satisfactory evidence to the court, presented by the district attorney, that such liquors are contraband.

It will be noticed that section 17 of the act is general except as to the statement to be inserted in the charge. It makes no reference to the issuance of the warrant, except that the district attorney shall cause it to be issued, does not designate any officer to issue the warrant, or declare any procedure, form, or limitations. For all these matters we are therefore to look to our general statute on searches and seizures. Thus it is apparent the intent was that section 17 should be construed in connection with the then existing law. Undoubtedly a warrant may issue under the general search warrant act for the discovery of implements and paraphernalia for the manufacture of liquor, where the same are intended to be used for the purpose of committing a crime—that is, for the manufacture of intoxicating liquors. Also, under the provisions of section 23 of the Alaska bone dry act, in my opinion, a search warrant may issue, subject to the limitations of the general search warrant law, for the discovery of liquor manufactured or possessed unlawfully. Such search warrant must be issued, however, strictly in compliance with the provisions of sections 2488, 2489, and 2490, Compiled Laws of Alaska. In other words, there must be a probable cause shown by the affidavit to the satisfaction of the magistrate, the person must be named or described, and the property described, and the place to be searched described. If a party claiming or controlling liquor illegally manufactured or possessed is not known, he may be designated by a fictitious name in the affidavit and warrant, provided he be properly described and it be stated that his true name is not known. See United States v. Borkowski [D. C.] 268 Fed. 411, and authorities cited.

But it is urged on behalf of the United States that the requiring of the name or description of the party having possession of the contraband liquor will work a great hardship on

the enforcement officers. · To this it may be replied that the court cannot legislate, but can only construe the law as it exists. The bone dry law of Alaska authorizes the Legislature of Alaska to enact such legislation as it may deem proper in furtherance of the provisions of the act. It does not appear that it has so done. It may be further suggested that, if the officers of the law should discover any person actually violating the bone dry law by manufacturing liquor, or having it in their possession, then it is·their duty to make an immediate arrest, and on such arrest the officers are authorized to take possession of the liquor so being manufactured and used.

The Fourth Amendment to the Constitution of the United States is a wise provision, designed to protect the homes and private business of the citizens from unwarranted intrusion and their effects and papers from seizure, under the guise of law, and does not apply where a crime is being committed in the presence of the officers of the law. As was said in Weeks v. United States, supra, the right of the government to search the person of the accused when legally arrested, to discover and seize the fruits and evidences of crime, has been uniformly maintained in many cases; also in the case of Borkowski v. the United States, supra, where the court says:

"The rule, state and federal, is that officers may arrest those who break the peace or commit crimes in their presence," and "may avert a criminal act in the process of commission, * * * either by arresting the doer or seizing and retaining the instrument of the crime"—citing many authorities.

Now, turning to the National Prohibition Act, we find still further authority for the search and seizure of intoxicating liquors, since, under the authority of the Abbate Case, that act is in force in the territory concurrently with the bone dry local act. Under the provisions of the National Prohibition Act, therefore, a search warrant may issue for the search for intoxicating liquors in any place but a private dwelling, occupied as such. Such search warrant, however, must issue under the limitations of the act of Congress of June 15, 1917, heretofore mentioned. .

Summing up, therefore, we have three provisions of law under which a search warrant may issue for intoxicating liquors: First, under section 17 of the bone dry act; second, under the provisions of section 23 of the bone dry act; in

both cases under the procedure of and limited by the general search warrant act; and, third, under the provisions of section 25 of the National Prohibition Act. Under each of said provisions a search warrant may issue for property used for the manufacture of intoxicating liquors, and, in addition thereto, a search warrant may issue for property held with intent to use it for the manufacture or sale of intoxicating liquors, under the provisions of the third paragraph of section 2487 of the Compiled Laws of Alaska, above quoted.

It possibly may be argued that section 17 of the bone dry act, above quoted, provides an exclusive remedy for search warrants for violations of the provisions of the act, and I would be inclined to hold to that view, were it not that the provisions of section 17 are limited by the general search warrant act contained in the Compiled Laws of 1913, limiting and prescribing the method by which search warrants may issue. Also, if section 17 were exclusive, what was the intent of the general provision of section 23 of the act, authorizing searches to be made for contraband liquors and the destruction thereof by order of the court, when satisfactory evidence is presented to the court that the liquors are contraband?

It is a natural presumption that Congress, in passing the Alaska bone dry law, knew of the provision of the general statutes of the territory, and, in enacting sections 17 and 23 of the bone dry act, above quoted, was cognizant of the limitations of our local statute with reference to the issuance of search warrants, and that the provision of section 17 of the Alaska bone dry act was intended by Congress to be supplemental to the existing law in order to make more effectual the means of the enforcement of the bone dry act. This is especially so as no provision for the issuance of a search warrant by a magistrate or the method of issuance of a search warrant are contained in the bone dry act, as well as no reference to any statute by which the warrants may issue. Again, Congress must have considered the conditions in Alaska, or at least had a knowledge of the great distances between settlements, the expense and difficulties of travel between the several points in the territory, and that there are few district attorneys assigned to the territory, and that the places of residence of the district attorneys and their deputies are at only the larger settlements in the several divisions, and that to com-

pel persons to appear before the district attorney to have him cause a warrant to issue. at his residence, perhaps hundreds of miles distant from the commissioner or the place where the crime is committed or the place to be searched, often involving weeks of travel, would, in many instances, render the whole proceedings for a search warrant nugatory.

Again, it appears from an inspection of the records of Congress that in the original bone dry act as introduced in Congress section 17 provided that, "upon request made, the district attorney or his assistants shall issue a warrant," and the act was thereafter amended so as to read that "he shall cause to be issued such warrant," showing that the whole proceeding authorized by section 17 was supplemental to existing laws on the subject of the issuance of the warrant, and was enacted to make it mandatory on the district attorney to act upon proper request.

Again, the reading of section 17 of the act, eliminating all extraneous matter, would be as follows:

"If one or more competent witnesses should appear before the district attorney or any of his assistants authorized thereto, presenting that a person was violating the provisions of the act and requesting a warrant to issue for the search of a certain place, the district attorney shall cause a warrant to issue."

This is the substance of the section, showing that the purpose of the section was that, if such person should appear before the district attorney and desire the district attorney to act and procure a search warrant for the search of the place named in the affidavit, it would be the mandatory duty of the district attorney to cause the warrant to issue.

My view is, therefore, that the provision in section 17 of the bone dry law for the issuance of a search warrant in certain cases is not exclusive, but that search warrants may be issued as heretofore indicated.

Having thus defined my view of the laws applicable to the issuance of search warrants, we will now consider the specific objections raised by counsel in these cases. The first three objections may be considered together.

The first objection is:

"That there is no showing of record that one or more persons who are competent witnesses appeared before the district attorney or any of his deputies before such warrant was issued, or at all."

This objection is raised because of the provisions of section 17 of the bone dry act and would not be material were the warrant issued under the further provision of the statute contained in section 23 of that act, as I have indicated. Every person is presumed to be a competent witness, and, except those of unsound mind and children under 10 years of age, incapable of receiving a just impression of the facts respecting which they testify or of relating them truly, all classes of persons are presumed competent witnesses. Sections 1865, 1866, Compiled Laws. Hence it is unnecessary, either in the affidavit or warrant or record, to show the competency of the person making the affidavit. Incompetency of a witness must be shown by the party objecting to him. Wharton on Criminal Evidence, p. 338.

The second objection raised is that "the oath or affirmation made was not made before the district attorney or his authorized deputy, as required by law." This objection is raised because section 17 of the bone dry law provides that, if one or more persons shall "charge, on oath, before the district attorney or his deputies, that a person is violating the provisions of the act," etc., and the contention is made that the oath under that section must be administered by the district attorney. As above stated, under the law I conclude that it is not necessary in any case, except under section 17 of the bone dry act, that the affidavit for a search warrant be taken before or approved by the district attorney. Even if the affidavit is made out under section 17, I do not deem it necessary that the district attorney should administer the oath; nor do I think, unless delegated the power of administering an oath by statute, he would have authority so to do. Nowhere in our statutes do I find authority for the district attorney to administer an oath. The reasonable construction of the requirement is that the words "charge under oath" should be construed so as to read "accuse on oath before the district attorney"; in other words, that if a presentment on oath be made to the district attorney, he should act. This is borne out by the form of the statute as originally introduced in Congress, which is that the accusation shall be made "before the district attorney and he should issue a warrant."

In the cases at bar the affidavit shows that the oaths to the affidavits were administered by the commissioner or mag-

istrate, and thereupon presented to the assistant district attorney, who indorsed upon the affidavit a request for the United States commissioner to issue a search warrant. Therefore the objection raised is not tenable.

The third objection raised is that:

"No charge was made before any one, either the United States district attorney or his deputies, or the United States commissioner, representing that any person, company, copartnership, association, club, or corporation has or have violated the provisions of the Alaska bone dry law."

Section 17 of the bone dry law specifically requires the charge to set forth the fact that a person, company, etc., has or have violated the law, and in what particular. Also section 2488 of the Compiled Laws requires that the person shall be named or described.

Neither the affidavit nor the search warrant in the Giovanetti case purports to name or describe the person or charge any persons with violation of the bone dry act. This is fatal, and the search warrant in that case must be declared void and the proceedings thereon illegal, and the warrant is quashed. Therefore the articles seized cannot be used in evidence in the prosecution of any case that may be brought against Giovanetti, if any there be, for violating the liquor law; nor can any evidence be admitted as to what was found during the search under the void warrant. This does not prevent the prosecution in such case from producing evidence of the violation of the act, obtained from sources other than that obtained through the service of the illegal search warrant or seizure.

As to the return of the intoxicating liquor, it appears from the return of the United States marshal on the search warrant that he took in his possession, in the Giovanetti case, one sample bottle containing wine, 30 bottles of wine, one 30-gallon barrel of wine, one hammer, one hose, one electric heater, two granite pans, one broom and a lot of corks and caps. All the articles except the liquors mentioned are ordered returned to the defendant Giovanetti. The wines, being prima facie contraband, will be held by the United States marshal, awaiting proof by the district attorney that they are contraband; that is to say, that they are intoxicating liquors.

The Giovanetti case having thus been disposed of, the remaining objections interposed by counsel will be considered solely with reference to the Messerschmidt case. In the Messerschmidt case the objection which is valid in the Giovanetti case does not lie. The affidavit and search warrant based thereon read as follows:

"United States of America, District of Alaska, Division No. 1, Juneau Precinct—ss.:

"A. E. Lucy, being duly sworn, says that he is a deputy United States marshal; that on the 17th day of September, 1921, at Juneau, district of Alaska, division No. 1, the crime of manufacturing, storing or depositing, offering for sale, keeping for sale, or use, trafficking in, bartering, exchanging for goods, giving away or otherwise furnishing alcoholic liquor was committed, to wit, by Gus Messerschmidt. And this deponent further says that on the 17th day of September, 1921, he watched the premises hereinafter described and occupied by said Gus Messerschmidt, and saw intoxicated men enter and leave said premises; that said deponent saw intoxicated men in said hereinafter described premises; saw them drinking from containers and, as a result of such drinking, saw said men become intoxicated and deport themselves as under the influence of intoxication; and in said hereinafter described premises saw such persons receiving alcoholic liquors from said Gus Messerschmidt and drinking said liquors which had the effect of intoxication; and that he therefore has, and there is, just, probable, and reasonable cause to believe, and that he states as true, that said Gus Messerschmidt now has concealed in the following described premises, viz.: At the San Francisco Bakery Building on Second street of Juneau, Alaska, which building is numbered 122 East Second street of said Juneau, Alaska; and in that certain wooden frame building which is directly in the rear of said San Francisco Bakery Building, numbered and described as aforesaid, in Juneau, Alaska, and in said precinct of Juneau—alcoholic liquor, all of which is contrary to the form, force, and effect of the statute in such cases made and provided, and against the peace and dignity of the United States of America, and this complainant prays that a search warrant may issue for the search of said premises, commanding the officer to whom such search warrant is directed to at once thoroughly search said described premises and the appurtenances thereof, and that, if any such intoxicating liquor be found, to take into his possession and safely keep the same, to be produced as evidence when required, all alcoholic liquors and all the means of dispensing the same, also all the paraphernalia or part of the paraphernalia of the barroom or other alcoholic liquor establishment, and any United States internal revenue tax receipt or certificate for the manufacture or sale of alcoholic liquors, effective for the period of time covering such alleged offense,

and forthwith bring the same before a magistrate to be disposed of according to law and report all the facts to the district attorney or his deputy.                    [Signed]  A. E. Lucy.

"Subscribed and sworn to before me this 19th day of September, 1921.

"[Signed]  H. B. Le Fevre,
"U. S. Commissioner, Justice of the Peace.

"In the Commissioner's Court of the Precinct of Juneau, Territory of Alaska, Division No. 1.

"The United States of America v. Gus Messerschmidt.

"Search Warrant.

"To the United States Marshal of the District of Alaska, Division No. 1, or Any Town Marshal or Policeman for the Incorporated Town of Juneau:

"Proof, by affidavit, having this day been made before me by A. E. Lucy that the above-named defendant now has concealed in the following described premises, namely: At the San Francisco Bakery Building, on Second street of Juneau, Alaska, which building is numbered 122 East Second street of said Juneau, Alaska, and in that certain wooden frame building which is directly in the rear of said San Francisco Bakery Building, numbered and described as aforesaid, in Juneau, Alaska, and in said precinct of Juneau— alcoholic liquor, you are therefore commanded to at once thoroughly search said described premises and the appurtenances thereof, in the day or night time, and, if any alcoholic liquors be found, to take into your possession and safely keep, to be produced as evidence when required, all alcoholic or intoxicating liquors and all the means of manufacturing or dispensing the same, also all the paraphernalia or part of the paraphernalia of a barroom or other alcoholic liquor establishment, and any United States internal revenue tax receipt or certificate for the manufacture or sale of alcoholic or intoxicating liquor, effective for the period of time between September 16, 1921, and September 19, 1921, and forthwith report all facts to the district attorney or his deputy, and bring all such alcoholic or intoxicating liquor and the means for dispensing the same, and the paraphernalia of a barroom or other alcoholic liquor establishment or United States internal revenue tax receipt or certificate as aforesaid before me to be disposed of according to law.

"Given under my hand and the official seal this 19th day of September, 1921.                    [Signed]  H. B. Le Fevre,

"United States Commissioner and Ex Officio Justice of the Peace."

An inspection of both the affidavit and the search warrant shows that Messerschmidt is named in both and is accused of violating the provisions of the Alaska bone dry law.

The fourth objection raised is that the place in which the violation is said to have occurred is not sufficiently described,

and the warrant includes premises not described in the affidavit. There is nothing in this objection which would invalidate the warrant. The premises to be searched were described sufficiently to be identified, and the warrant follows the description. It is not necessary that the exact legal description of the property be inserted in the warrant or the affidavit. The description is sufficient if from it the place to be searched can be readily identified by the officers serving the same.

But the defendant urges in this objection that the San Francisco Bakery Building is a three-story building, occupied by different families as dwelling places on the second and third floors. This objection might be pertinent under the National Prohibition Act, but I do not deem it so under the bone dry law, where the place to be searched is sufficiently described as to be readily identified by the officers serving the warrant. The affidavit sets forth that the premises are occupied by the defendant Messerschmidt. The search warrant sets forth that the defendant has concealed therein alcoholic liquors, and in my opinion it sufficiently describes the premises to be searched.

The fifth and sixth objections are as to the question of probable cause. Reference to the affidavit is sufficient to show probable cause. If, as the affidavit shows, the affiant saw men drinking from containers on the premises, and as a result thereof the men became intoxicated, and in the premises saw persons receive alcoholic liquors from the defendant and drinking liquors which had the effect of intoxication, there can be no question of probable cause for the issuance of the warrant. The objection maintained by the defendant that there should be an express finding of probable cause in the warrant itself, or spread on the justice's record, is not tenable. Those cases cited by the defendant which require that the finding of probable cause be set forth in a search warrant are based upon special statutes, requiring a finding to that effect in the warrant itself. The fact that a search warrant is issued by a justice is in itself a finding of probable cause by him. Such probable cause can be found by a comparison of the affidavit with the warrant.

There is no provision in our laws prescribing a form of such warrants other than that provided for and set forth in section 2490 of the general search warrant law of the territory.

which was in force at the time of the enactment of the local bone dry law, and the form so set forth in the general search warrant law should guide the magistrate and would be sufficient if substantially in compliance therewith. The form used in the case at bar is substantially as prescribed by section 2490 of the Compiled Laws, and is therefore sufficient.

The 'eighth and ninth objections that no receipt was given for the property seized, or no proper return was made by the officer, are simply omissions by the officer making the seizure and merely omissions to do ministerial acts, to be executed by the officer after the warrant was executed, and which may be corrected by him. This omission on the part of the officer cannot be urged for quashing the warrant. United States v. Kraus (D. C.) 270 Fed. 579; Rose v. United States (C. C. A.) 274 Fed. 246.

The objection to the search warrant and proceedings in the Messerschmidt case being wholly untenable, the petition for the return of the property seized should be denied. It is therefore directed that an order be issued to the United States commissioner to proceed in accordance with this opinion.

---

⬤⟹See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes